## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYCO INTEGRATED SECURITY LLC,<br>A DELAWARE LIMITED LIABILITY COMPANY<br>1501 YAMATO ROAD<br>BOCA RATON, FLORIDA 33431 | CIVIL ACTION<br><br>No. |

vs

INTEGRATED SECURITY HOLDINGS GROUP, LLC,
A NEW JERSEY LIMITED LIABILITY COMPANY
d/b/a INTEGRATED SECURITY &
COMMUNICATIONS, 502 MAIN STREET, TOMS
RIVER, NEW JERSEY, 08573, AND 4110 BUTLER
PIKE, SUITE B100, PLYMOUTH MEETING,
PENNSYLVANIA 19462

and

THOMAS CATAGNUS, AN INDIVIDUAL CITIZEN OF
THE COMMONWEALTH OF PENNSYLVANIA, 2124
WENTZ CHURCH ROAD, LANSDALE,
MONTGOMERY COUNTRY, PENNSYLVANIA, 19446

and

JOHN PICHOLA, AN INDIVIDUAL CITIZEN OF THE
COMMONWEALTH OF PENNSYLVANIA, 7
GREGORY LANE, CHESTER SPRINGS, CHESTER
COUNTY, PENNSYLVANIA, 19425

and

JOEL RICHMAN, AN INDIVIDUAL CITIZEN OF THE
COMMONWEALTH OF PENNSYLVANIA, 2 STABLE
COURT, COLLEGEVILLE, MONTGOMERY COUNTY,
PENNSYLVANIA, 19426

---

## **COMPLAINT**

Plaintiff Tyco Integrated Security LLC ("TycoIS"), by its undersigned counsel,

brings this action against Defendants Integrated Security & Communications ("ISC"), Thomas

Catagnus, John Pichola, and Joel Richman for (1) Breach of Contract; (2) Breach of Fiduciary

-1-

Duty; (3) Tortious Interference with Business Relations; (4) Violation of Pennsylvania Uniform Trade Secrets Act and similar laws of any other State in which Defendants do business; and (6) Unfair Competition. In support hereof, TycoIS avers as follows:

## THE PARTIES

1.      Tyco Integrated Security LLC, formerly known as ADT Security Services, Inc., is a limited liability company organized under the laws of the State of Delaware and with a principal place of business located at 1501 Yamato Road, Boca Raton, Florida 33431.

2.      Upon information and belief, Defendant Integrated Security Holdings Group, LLC d/b/a Integrated Security & Communications is a New Jersey limited liability company located at 502 Main Street, Toms River, New Jersey, 08573, and at 4110 Butler Pike, Suite B100, Plymouth Meeting, Pennsylvania 19462.

3.      Upon information and belief, Defendant Thomas Catagnus is an adult individual residing at 2124 Wentz Church Road, Lansdale, Montgomery County, Pennsylvania, 19446.

4.      Upon information and belief, Defendant John Pichola is an adult individual residing at 7 Gregory Lane, Chester Springs, Chester County, Pennsylvania, 19425.

5.      Upon information and belief, Defendant Joel Richman is an adult individual residing at 2 Stable Court, Collegeville, Montgomery County, Pennsylvania, 19426.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to Title 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.      Venue is proper in this District pursuant Title 28 U.S.C. § 1391(b)(2).

## RELEVANT FACTS

8.     TycoIS is a worldwide leader in designing and providing integrated security solutions to a wide range of industries including, but not limited to, government facilities, educational institutions, pharmaceutical companies, and other commercial and industrial businesses.

9.     TycoIS has invested substantial resources and time over many years to develop its business and national customer base and to promote its goodwill and reputation in the security industry.

10.     With over 10,000 employees deployed to meet the security needs of over 500,000 customers across North America, TycoIS provides integrated security solutions on a nationwide, and indeed international, basis.

11.     As part of its security business, TycoIS has developed and acquired substantial Confidential, Proprietary Information and Trade Secrets, including, but not limited to, detailed information about TycoIS's business and sales strategy, product cost structure, pricing models, customer lists, new prospective accounts, sales data and new product development (collectively, "Confidential Information and Trade Secrets").

12.     TycoIS's Confidential Information and Trade Secrets have independent economic value and are not generally known to others who would be able to derive economic value from them.

13.     TycoIS's Confidential Information and Trade Secrets are not readily attainable by proper means from outside TycoIS.  This information is protected by TycoIS as part of its regular business practices, including, but not limited to, by means of employment agreements and restrictive covenants such as the ones at issue here.

## TYCOIS'S ACQUISITION OF INTERCON SECURITY LIMITED

14.     On or about April 14, 2008, ADT Security Services of Canada, Inc. (an Ontario corporation, an indirect, wholly-owned subsidiary of Tyco International Ltd. ("TIL"), and "Purchaser" signatory to the Retention Incentive Agreements entered into with Defendants

Catagnus, Pichola, and Richman, respectively), purchased Intercon Security Ltd. ("Intercon") (a Canadian corporation and "Company" signatory to the Retention Incentive Agreements) along with Intercon's U.S. wholly-owned subsidiary FirstService (USA) Security Holdings, Inc. ("FirstService") and FirstService's U.S. wholly-owned subsidiaries including BLW, Inc. d/b/a Security Services and Technologies ("SST"). Later, on or about July 1, 2008, through a series of internal corporate transactions, interest in the Intercon U.S. subsidiaries (including SST) was transferred from ADT Security Services of Canada, Inc. ultimately to ADT Security Services, Inc. (a U.S. entity which is now known as TycoIS). TycoIS is, therefore, a "successor to the business of Company [Intercon]" (as stated under Paragraph 10 of the Retention Incentive Agreements relating to Assignment of the Retention Incentive Agreements) as a result of the series of internal corporate mergers and transaction, and TycoIS has the legal authority to enforce the Retention Incentive Agreement entered by and between ADT Security Services of Canada, Inc. and Defendants Catagnus, Pichola, and Richman, respectively.

15.　　TycoIS, through its predecessor, paid millions of dollars to acquire FirstService Corporation and SST.

16.　　Upon information and belief, as shareholders/owners of SST, the Defendants Thomas Catagnus, John Pichola, and Joel Richman (collectively, the "Individual Defendants") each received millions of dollars in connection with the acquisition.

17.　　Following TycoIS's acquisition of SST, the Individual Defendants remained as employees and executives of TycoIS for which they received substantial compensation apart from the millions of dollars they personally received as a result of the SST acquisition.

18.　　During his tenure with ADT and TycoIS, Defendant Catagnus worked as a Regional Vice President of Corporate Accounts and later became Vice President of Vertical Sales for the Advanced Integration Division.

19.　　During his tenure with ADT and TycoIS, Defendant Pichola worked as Vice President of Finance for the Advanced Integration Division.

20.     During his tenure with ADT and TycoIS, Defendant Richman worked as Director of Information Technology for ADT Advanced Integration and later became the Vice President of Integrated Solutions.

21.     Each of the Individual Defendants primarily worked from Plaintiff's Norristown office, located at 2450 Boulevard of the Generals, Norristown, Pennsylvania, 19403.

22.     Given their high ranking positions within the company, the Individual Defendants had access to and acquired significant TycoIS Confidential Information and Trade Secrets.

23.     The Individual Defendants each had substantial of TycoIS's business and sales strategy, product cost structure, pricing models, customer lists, potential new customer files, sales data and new product development.

24.     The Individual Defendants had access to and used this information in the regular performance of their duties as Vice President of Sales, Vice President of Finance, and Chief Information Officer, respectively.

25.     Much of the Confidential Information and Trade Secrets resides on TycoIS's Khameleon Software, which, while a generally available Enterprise Resource Planning software application, is a project accounting software onto which TycoIS enters and maintains sensitive Confidential and Trade Secret Information, such as financial information, pricing structure, and customer information.

26.     Upon leaving TycoIS, Defendant Richman, the former Chief Information Officer, returned his company issued laptop. Upon inspection of the laptop, it was discovered that Defendant Richman had wiped clean, *i.e.*, erased, the contents of the laptop.

27.     Upon information and belief, the Individual Defendants had accessed the TycoIS Khameleon database prior to their departure and are now using and/or will use and/or will inevitably use TycoIS's Confidential Information and Trade Secrets in violation of the laws of Unfair Competition and in breach of their respective Restrictive Covenants, as further set forth below.

## TYCOIS PROVIDES ADDITIONAL COMPENSATION TO SST'S PRINCIPALS IN RETENTION INCENTIVE AGREEMENTS IN ORDER TO OBTAIN RESTRICTIVE COVENANTS INCLUDING NON-COMPETITION AND NON-SOLICITATION

28.    In connection with, and to protect the value of, TycoIS's acquisition of SST, TycoIS entered into Retention Incentive Agreements with Defendants Catagnus, Pichola, and Richman.

29.    The Retention Incentive Agreements are governed by Florida Law. Exhibit "A" at ¶15.[1]

30.    Each of the Individual Defendants signed a Retention Incentive Agreement that provided that TycoIS would pay him additional substantial compensation if he remained a TycoIS employee for at least two (2) years following TycoIS's purchase of SST. *See* Exhibit "A" at ¶4(a).

31.    The Retention Incentive Agreements further provide a <u>Non-Compete Covenant</u> which states: "In consideration for the incentives to be provided pursuant to Section 4 hereof and any consideration paid to Employee in connection with the Share Purchase to purchase shares of capital stock of the Company held by Employee, Employee agrees that during the term of Employee's employment with the Company (or any unit of the Purchaser Group, as may be applicable) and for a period of **three (3)** years following the termination of Employee's employment with the Company (or any unit of the Purchaser Group, as may be applicable) (the 'Non-Compete Period') neither Employee nor any entity owned (directly or indirectly in any percentage) by or affiliated with Employee shall:

> (i)  own, manage, control, participate in, consult with, advertise on behalf of, render services for, or in any manner engage in, any Competitive Business (as defined below) in the Restricted Territory (as defined below), or

> (ii)  solicit any other person or entity to engage in any of the foregoing activities, or

---

[1]    The Retention Incentive Agreements also provide for venue in Florida, however, because all of the Defendants are located in the Commonwealth of Pennsylvania, in order to better effectuate and enforce any injunctive relief that may be entered by this Court and because four of the five Causes of Action in the Complaint are governed by Pennsylvania Law, Tyco waives the venue provision.

(iii)  knowingly request, induce or attempt to influence any then existing customer of the Company to curtail any business such customer is then currently, or in the then-preceding 36 months has been, transacting with the Company, including its successors and assigns (the 'Non-Compete')."

32.    The Retention Incentive Agreements thereafter define "Competitive Business" to "mean a business consisting of the design, integration, planning, installation, monitoring, repair, testing, and servicing of security systems (regardless of the technology used therein or in connection therewith, and regardless of whether such technology exists at the Agreement date or does not exist then but instead is invented thereafter), including . . . security integration solutions for commercial, industrial, governmental, institutional and residential facilities . . . ." *Id.* at ¶6(c)(i).

33.    "Restricted Territory" is defined, in turn, as "anywhere in North America where ADT Security Services, Inc. and/or any of its subsidiaries or affiliates do business." *Id.* at ¶6(c)(ii).

34.    Pursuant to the Retention Incentive Agreements, the Individual Defendants further agreed to a <u>Non-Solicitation Covenant</u> with a period of three (3) years dated from their separation from TycoIS, which prohibited each of them directly or indirectly to:

(a)   solicit, recruit, or entice away any customer of the Company or Purchaser Group to do business with Employee or any Competitive Business with which Employee is affiliated or in any way to interfere with the contractual or business relationship by any customer with the Company or any member of the Purchaser Group;

(b)   provide names or other information about customers of the Company or any unit of the Purchaser Group to any person or business other than the Company or any unit of the Purchaser Group under circumstances which the Employee knows or should know could lead to use of that information for purposes of customer solicitation;

(c)   solicit, recruit, aid or induce any active employee of the Company, any unit of the Purchaser Group, or any of their parents, subsidiaries or affiliates to leave such employment to accept employment with or render services to or with any other person, firm, corporation, or other entity unaffiliated with the Company or any unit of the Purchaser Group or take any action to assist or aid any other person, firm, corporation or other entity in identifying or hiring any such employee;

(d)  hire, offer employment to, or participate in the hiring of any person who was at any time during the one year period preceding such activity an employee of the Company, any unit of the Purchaser Group, or any of their parents, subsidiaries or affiliates;

(e)  provide names or other information about active employees of the Company, any unit of the Purchaser Group, or any of their parents, subsidiaries or affiliates to any person or business other than the Company or any unit of the Purchaser Group under circumstances which the Employee knows or should know could lead to use of that information for purposes of employee solicitation; or

(f)  interfere with the relationship of the Company or any unit of the Purchaser Group with any of its or their employees, agents, or representatives.

*Id.* at ¶7(a)-(f).

35.    Finally, each of the Individual Employees "acknowledge[d] that irreparable injury will result to Purchaser, and to its business, in the event of a material breach by Employee of any of Employee's covenants and commitments under this Agreement." *Id.* at ¶13.

36.    Defendant Thomas Catagnus signed his Retention Incentive Agreement, including the Non-Competition and Non-Solicitation provisions, on June 2, 2008, in exchange for significant additional consideration ($164,470) plus employment at a substantial salary ($210,000) with benefits. *See* Exhibit "A" at ¶4(a).

37.    Defendant John Pichola signed his Retention Incentive Agreement, including the Non-Competition and Non-Solicitation provisions, on June 9, 2008, in exchange for significant additional consideration ($190,449) plus employment at a substantial salary ($175,000) with benefits. *See* Exhibit "B" at ¶4(a).

38.    Defendant Joel Richman also signed his Retention Incentive Agreement, including the Non-Competition and Non-Solicitation provisions, on June 9, 2008 in exchange for significant additional consideration ($128,750) plus employment at a substantial salary ($175,000) with benefits. *See* Exhibit "C" at ¶4(a).

## NON-COMPETE AND NON-SOLICIT COVENANTS IN THE STOCK AND INCENTIVE PLAN

39.     Though having already received in excess of $100,000 <u>and</u> employment for agreeing not to compete and/or solicit TycoIS employees and customers for a reasonable time after their separation from TycoIS, each of the Individual Defendants <u>also</u> received <u>additional</u> consideration pursuant to the TycoIS 2004 Stock and Incentive Plan.

40.     In accepting additional stock compensation, each of the Individual Defendants also agreed to a <u>Non-Compete Covenant</u> which states that "during your employment with the Company or its Subsidiaries, and for the one year period following your Termination of Employment for any reason, you will not directly or indirectly, own, manage, operate, control (including indirectly through a debt or equity investment), provide services to, or be employed by, any person or entity engaged in any business that is (i) located in a region with respect to which you had substantial responsibilities while employed by the Company or its Subsidiaries, and (ii) competitive with (A) the line of business or businesses of the Company or its Subsidiaries that you were employed with during your employment (including any prospective business to be developed or acquired that was proposed at the date of termination, or (B) any other business of the Company or its Subsidiaries with respect to which you had substantial exposure during such employment." *See* Exhibit "D" at ¶12(b).

41.     In addition, pursuant to the 2004 Stock and Incentive Plan, each of the Individual Defendants agreed to a <u>Non-Solicit Covenant</u> which states that "during your employment with the Company or its Subsidiaries, and for the two-year period thereafter, you will not, directly or indirectly, on your own behalf or on behalf of another (1) solicit, recruit, aid or induce any employee of the Company or any of its Subsidiaries to leave their employment with the Company or its Subsidiaries in order to accept employment with or render services to another person or entity unaffiliated with the Company or its Subsidiaries, or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee, or (ii) solicit, aid, or induce any customer of the Company or its Subsidiaries to purchase goods or services then sold by the Company or its Subsidiaries from another person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer,

or (iii) otherwise interfere with the relationship of the Company or any of its Subsidiaries with any of its employees, customers, agents, or representatives." *Id.*

42.     Finally, the 2004 Stock and Incentive Plan specifically noted that "[i]rreparable injury will result to the Company, and to its business, in the event of a breach by you of any of your covenants and commitments under this Agreement." *Id.*

43.     On November 11, 2011, Defendant Catagnus executed a "Form of Acceptance of Terms and Conditions," which specifically **"acknowledge[d] that these Terms and Conditions contain a <u>noncompetition provision</u> that may impact your ability to perform certain services in the future."** *See* Exhibit "E" (emphasis in original).

44.     Defendant Catagnus explicitly marked the box to indicate that "I acknowledge receipt of these Terms and Conditions for the Restricted Unit Award dated October 12, 2011, including the noncompetition provision contained therein." *Id.*

45.     In consideration for this noncompetition provision, Defendant Catagnus received $75,000.

46.     On November 8, 2011, Defendant Pichola executed a "Form of Acceptance of Terms and Conditions," which specifically **"acknowledge[d] that these Terms and Conditions contain a <u>noncompetition provision</u> that may impact your ability to perform certain services in the future."** *See* Exhibit "F" (emphasis in original).

47.     Defendant Pichola explicitly marked the box to indicate that "I acknowledge receipt of these Terms and Conditions for the Restricted Unit Award dated October 12, 2011, including the noncompetition provision contained therein." *Id.*

48.     In consideration for this noncompetition provision, Defendant Pichola received $45,000.

49.     On November 7, 2011, Defendant Richman executed a "Form of Acceptance of Terms and Conditions," which specifically **"acknowledge[d] that these Terms and Conditions contain a <u>noncompetition provision</u> that may impact your ability to perform certain services in the future."** *See* Exhibit "G" (emphasis in original).

50.     Defendant Richman explicitly marked the box to indicate that "I acknowledge receipt of these Terms and Conditions for the Restricted Unit Award dated October 12, 2011, including the noncompetition provision contained therein." *Id.*

51.     In consideration for this noncompetition provision, Defendant Richman received $150,000.

## NON-DISCLOSURE, NON-COMPETE, AND NON-SOLICIT COVENANTS IN THE SEPARATION OF EMPLOYMENT AND GENERAL RELEASE AGREEMENTS

52.     In connection with their separation from TycoIS, Defendants Thomas Catagnus and John Pichola also each executed a Separation of Employment Agreement and General Release ("Separation Agreements").[2]

53.     Under these Separation Agreements, Defendants Catagnus and Pichola received further substantial payments in exchange for, yet again, re-affirming their agreements to refrain from competing with TycoIS for a reasonable period of time.

54.     Upon his departure from TycoIS, Mr. Catagnus received supplemental unemployment benefits for a significant period of time following termination of his employment.

55.     In exchange for this consideration, Messrs. Catagnus and Pichola agreed to a <u>Non-Disclosure Covenant</u> that they would not, directly or indirectly, use, make available, sell, disclose or otherwise communicate to any person, other than in the course of their assigned duties and for the benefit of the TycoIS, either during the period of their employment or at any time thereafter, any nonpublic, proprietary or confidential information, knowledge or data relating to the TycoIS, or any of its businesses, which shall have been obtained by them during their employment by the TycoIS.

56.     In addition to the foregoing, Defendants Catagnus and Pichola further acknowledged that TycoIS provided them with confidential and proprietary information pertaining to its business operations and customers," and, therefore, agreed to a <u>Non-Solicit</u>

---

[2]     The particular provisions and terms of the Separation Agreements are protected by a Confidentiality Provision. However, Defendants are in possession of a copy of their respective Separation Agreements and TycoIS will provide a copy to the Court Under Seal when necessary.

Covenant which states that during their employment with TycoIS, and for the two (2) year period thereafter, they will not, directly or indirectly, on behalf of themselves or on behalf of another (i) solicit, recruit, aid or induce any employees of TycoIS to leave their employment with TycoIS in order to accept employment with or render services to or with another person or entity unaffiliated with TycoIS, or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee, or (ii) solicit, aid, or induce any customer of TycoIS to purchase goods or services then sold by TycoIS from another person or entity, or assist or aid any other persons or entity in identifying or soliciting such customer, or (iii) otherwise interfere with the relationship of TycoIS with any of its employees, customers, vendors, agents, or representatives.

57.     Defendants Catagnus and Pichola further acknowledge[d] that they performed services of a unique nature for TycoIS, and that their performance of such services for a competing business will result in irreparable harm to TycoIS.

58.     Accordingly, in accepting the separation benefits provided under [the] Agreement, and in consideration of these separation benefits, and or TycoIS having provided them with confidential and proprietary information pertaining to its business operations and customers, and their promise and obligation not to use or disclose that information except in the course of performing their job duties, Defendants Catagnus and Pichola agreed to a Non-Compete Covenant which states that during their employment with TycoIS and for the six (6) months thereafter, or such longer period of non-competition as is included in any offer letter, equity agreement or other agreement between them and TycoIS, they will not directly or indirectly, own, manage, operate, control (including indirectly through a debt or equity investment), provide services to, or be employed by, any person or entity engaged in any business that is (i) located in or provides services or products to a region with respect to which Employee had substantial responsibilities while by TycoIS, and (ii) competitive with (A) the line of business or businesses of TycoIS that they were employed with during their employment (including any prospective business to be developed or acquired that was proposed at their Date of Termination), or (B) any other business of TycoIS with respect to which they had substantial exposure during such employment.

-12-

59.     Upon information and belief, Defendants Catagnus and Pichola did not even comply with six (6) month non-compete period set forth in Section 4(c) of the Separation Agreements.

60.     More importantly, however, while each of the Separation Agreements fully supersedes any prior agreements or understandings, the integration provision does not apply to the extent that they both acknowledged an obligation of non-competition in any offer letter, equity agreement or otherwise that exceeds six (6) months following their respective Dates of Termination.

61.     In such instances, then the greater obligation shall be incorporated herein by reference and shall remain in full force and effect.

62.     Thus, the prior non-competition agreements signed by Messrs. Catagnus and Pichola remain in full force and effect.

63.     Defendant Catagnus, whose Date of Termination was August 21, 2012, is subject to the three-year Non-Competition and Non-Solicitation Covenants set forth in his Retention Incentive Agreement.

64.     Defendant Pichola, whose Date of Termination was March 5, 2012, is subject to the three-year Non-Competition and Non-Solicitation Covenants set forth in his Retention Incentive Agreement.

65.     Defendant Richman, whose date of termination was October 16, 2012, is subject to the three-year Non-Competition and Non-Solicitation Covenants set forth in his Retention Incentive Agreement.

## THE INDIVIDUAL DEFENDANTS WILLFULLY BREACHED THEIR RESPECTIVE RESTRICTIVE COVENANTS PROVIDED IN THEIR EMPLOYMENT AGREEMENTS

66.     Because each of the Individual Defendants were, and are currently, subject to multiple Non-Competition and Non-Solicitation Agreements that did not and/or do not expire until 2015 (and now longer as the duration is equitably tolled during the periods of non-compliance), and because TycoIS had paid each Individual Defendant hundreds of thousands of

dollars in consideration for those Restrictive Covenants, TycoIS was understandably surprised to learn that each of the Individual Defendants had accepted employment with direct competitor Defendant ISC, in blatant violation of their contractual promises.

67.     Indeed, it was only because of the egregiousness with which Defendants disregarded their contractual commitments that TycoIS learned of Defendants' unlawful acts.

68.     In the early part of the 2013, TycoIS noticed that a number of its key personnel were resigning in order to, as TycoIS later discovered, join a competitor, Defendant ISC.

69.     To date, upon information and belief, Individual Defendants have solicited, in direct violation of their Non-Solicitation Agreements, the following former TycoIS personnel: Richard Caesar, William Coccia, Paul Hoffman, Cheryl Mondoc, Remo Patitucci, Ryan Pryor, Erick Sanchez, Juan Salas-Martinez, and Steven Vanegas, as well as other employees who are currently still employed by Plaintiff.

70.     By late March/early April 2013, TycoIS realized that Defendants Catagnus, Pichola, and Richman had not only left TycoIS, (a) they were reforming the former SST group of employees and had joined a competitor, Defendant ISC, and (b) they had accepted positions with ISC that, upon information and belief, are virtually identical to those previously held with TycoIS.

71.     Upon information and belief, Defendants own a substantial equity interest in Defendant ISC.

72.     Thus, for example, while Mr. Catagnus was formerly Vice President of Sales at TycoIS, he is now, upon information and belief, the lead executive responsible for Sales & Marketing at Integrated Security & Communications.

73.     Likewise, whereas Mr. Richman was previously Chief Information Officer for TycoIS, upon information and belief, he now holds the identical position with Defendant ISC.

74.   Finally, upon information and belief, Mr. Pichola is now the Chief Financial Officer at ISC after having served in the same role for TycoIS.

75.   Because of the Individual Defendants' responsibilities at ISC are similar, if not virtually identical, to their responsibilities at TycoIS, the Individual Defendants' have used/disclosed or inevitably will use/disclose TycoIS's Confidential Information and Trade Secrets in the performance of their duties at a direct competitor, ISC.

76.   Upon information and belief, each of the other personnel unlawfully solicited by the Individual Defendants hold similar, if not identical, roles at ISC as they did at TycoIS.

77.   ISC is a direct competitor of TycoIS in the integrated security solutions industry.

78.   By way of example, ISC touts its experience for providing integrated security solutions  to the Education, Industrial, Pharma/Healthcare, Government, Transportation, Financial, and Property Management industries on its website.   *See* ISC Web Site at http://www.integratedsecurity-hg.com/integrated-security-about-us.php.

79.   Given that ISC systematically targeted key TycoIS personnel, it is not surprising that this list of serviced industries is virtually identical to those also listed on TycoIS's website, wherein TycoIS discusses its expertise in developing integrated security solutions for the Education, Commercial & Industrial, Pharmaceuticals, Government, Transportation & Logistics, and Banking & Financial Services.  http://www.tycois.com/solutions-by-industry.

80.   Indeed, upon information and belief, Defendant Pichola expressly declared to others in the industry that ISC was "going after Tyco."

81.   By way of demonstration of ISC's and Mr. Pichola's intent, Remo Patitucci, a former TycoIS employee who (upon information and belief) was solicited to join ISC, said that a large university's account would go with the former TycoIS employees when TycoIS's contract ended.

82.     To better effectuate its plan of "going after Tyco," on October 1, 2012, ISC announced that it had "open[ed] an office in Plymouth Meeting, Pennsylvania in order to offer its products and services to its growing base of clients throughout Eastern Pennsylvania and Delaware" while noting that "recruiting some of the very best talent in the industry has been relatively easy . . . ." *See* ISC Web Site (quoting ISC's Chief Executive Officer, Michael Thomas).

83.     Upon information and belief, Defendants Catagnus, Pichola, and Richman are working in ISC's Plymouth Meeting office which is located at 4110 Butler Pike, Suite B100, Plymouth Meeting, Pennsylvania 19462, less than ten (10) miles from their former TycoIS place of employment.

84.     As a result, the Individual Defendants are working for a direct competitor in the same region where they formerly maintained substantial responsibilities for TycoIS.

85.     Ultimately, Messrs. Catagnus, Pichola and Richman, with ISC's full knowledge and support, have used the millions of dollars that TycoIS provided to ensure that they would not solicit TycoIS's customers and employees to create a competitor less than ten (10) miles from TycoIS's doorstep.

## COUNT I

## BREACH OF CONTRACT
## (TycoIS v. Individual Defendants)

86.     TycoIS incorporates by reference Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.     The Retention Incentive Agreements, 2004 Stock and Incentive Plans, and Separation Agreements constitute valid and enforceable contracts between TycoIS and Messrs. Catagnus, Pichola, and Richman.

88.     The Restrictive Covenants signed by Messrs. Catagnus, Pichola, and Richman are reasonable as to geographic scope and length of duration or, in the alternative, can be modified (if necessary), in accordance with Florida Law, by this Court to contain restrictions

that are reasonable as to geographic scope and/or length of duration. FLA. STAT. §§ 542.335(d)(3).

89. Moreover, the Restrictive Covenants are justified as they protect legitimate business interests of TycoIS including (1) Trade Secrets; (2) valuable confidential business or professional information that otherwise does not qualify as trade secrets; (3) substantial relationships with specific prospective or existing customers, patients, or clients; or (4) customer, patient, or client goodwill. FLA. STAT. §542.335(b).

90. By working for ISC, Messrs. Catagnus, Pichola, and Richman are engaging in a line of business that directly competes with a line of business of TycoIS prior to the expiration of their Restrictive Covenants.

91. Messrs. Catagnus, Pichola, and Richman duties and responsibilities at ISC are, upon information and belief, substantially similar to those duties they performed for TycoIS. Therefore, Messrs. Catagnus, Pichola, and Richman, by working for ISC, are in breach of their Restrictive Covenants with TycoIS.

92. By working for ISC, an entity that directly competes against the business activities of TycoIS, Messrs. Catagnus, Pichola, and Richman will inevitably use and/or are using, Confidential Information and Trade Secrets which TycoIS provided to them, or which they obtained during their employment at TycoIS.

93. TycoIS's business activities will be severely impaired if Messrs. Catagnus, Pichola, and Richman and ISC are permitted to unfairly compete with TycoIS and to misappropriate, disclose, and use TycoIS's Confidential Information and Trade Secrets.

94. TycoIS has suffered and, unless Messrs. Catagnus, Pichola, and Richman are enjoined by this Court, will continue to suffer irreparable harm as a result of Messrs. Catagnus, Pichola, and Richman breaches of their Restrictive Covenants, including but not limited to, misappropriation of TycoIS's Confidential Information and Trade Secrets.

## COUNT II

### BREACH OF FIDUCIARY DUTY
### (TycoIS v. Individual Defedants)

95.     TycoIS incorporates by reference Paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96.     During their employment with TycoIS, Messrs. Catagnus, Pichola, and Richman were in positions of trust and confidence.

97.     In their employment capacity, Messrs. Catagnus, Pichola, and Richman had access to TycoIS's Confidential Information and Trade Secrets, including, among other information, detailed information about TycoIS's business and sales strategy, product cost structure, pricing models, customer lists, new account prospect files, sales data and new product development.

98.     Because of their employment, both as senior executives and in positions of trust and confidence, Messrs. Catagnus, Pichola, and Richman had a duty to keep confidential all of TycoIS's Confidential Information and Trade Secrets that they learned and/or obtained during his employment with TycoIS. This duty survived their respective separations from TycoIS.

99.     Upon information and belief, Messrs. Catagnus, Pichola, and Richman have used and/or disclosed or imparted, and/or are likely to, and/or it is inevitable that they will use, disclose or impart, and unless enjoined, will use, disclose, and impart such Confidential Information and Trade Secrets of TycoIS in breach of their fiduciary duty to TycoIS.

100.     Unless Messrs. Catagnus, Pichola, and Richman are ultimately enjoined, TycoIS will suffer irreparable harm as a result of the Individual Defendants' breach of fiduciary duty.

## COUNT III

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (TycoIS v. ISC)

101.    TycoIS incorporates by reference Paragraphs 1 through 100 of this Complaint as if fully set forth herein.

102.    Messrs. Catagnus, Pichola, and Richman  signed valid and enforceable Restrictive Covenants with TycoIS, that in exchange for substantial monetary consideration, TycoIS made available to them or specifically provide to them Confidential Information and Trade Secrets, and they would perpetually maintain the confidentiality of TycoIS's Confidential Information and Trade Secrets, and, further, they would not compete against TycoIS for a period of up to three (3) years following their separation from the company.

103.    Upon information and belief, upon hiring Messrs. Catagnus, Pichola, and Richman, ISC was aware of their Restrictive Covenants with TycoIS.

104.    Notwithstanding ISC's knowledge of Messrs. Catagnus, Pichola, and Richman obligations to TycoIS under the terms of their Restrictive Covenants, ISC, intending to harm TycoIS by interfering with Messrs. Catagnus, Pichola, and Richman's Restrictive Covenants with TycoIS, offered Messrs. Catagnus, Pichola, and Richman positions which it knew, or should have known, were in direct violation of Messrs. Catagnus, Pichola, and Richman's Restrictive Covenants with TycoIS, both with respect to the disclosure of Confidential Information and Trade Secrets as part of the position offered and because of the three-year prohibition against employment by a competitor in a virtually identical position.

105.    ISC had no privilege or justification to interfere with Messrs. Catagnus, Pichola, and Richman's Restrictive Covenants with TycoIS.

106.    Unless this Court enjoins ISC from employing Messrs. Catagnus, Pichola, and Richman, TycoIS will suffer irreparable harm as a result of ISC's tortious inference with Mr. Messrs. Catagnus, Pichola, and Richman's Restrictive Covenants with TycoIS.

## COUNT IV

### VIOLATION OF THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### 12 Pa. C.S.A. § 5302 *et seq.* AND/OR SIMILAR LAWS OF ANY OTHER STATE IN
### WHICH DEFENDANTS DO BUSINESS
### (TycoIS v. All Defendants)

107.    TycoIS incorporates by reference Paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.    The Confidential Information and Trade Secrets to which the Individual Defendants had access while employed by TycoIS regarding TycoIS's integrated security solutions business includes, but is not limited to, detailed information residing on the Khameleon System (which includes but is not limited to TycoIS's business and sales strategy, product cost structure, pricing models, customer lists, new account prospect files, sales data and new product development) constitute trade secrets of TycoIS as defined by the Pennsylvania Uniform Trade Secrets Act and those similar Acts of all other States.

109.    TycoIS had made and continues to make reasonable efforts to maintain the secrecy of the trade secrets acquired by the Individual Defendants, including but not limited to requiring employees to execute agreements promising to maintain the secrecy and proper treatment of the Confidential Information and Trade Secrets.

110.    The Confidential Information and Trade Secrets acquired by Messrs. Catagnus, Pichola, and Richman derive actual and potential economic value from not being generally available to the public or to TycoIS's competitors, including ISC.

111.    Messrs. Catagnus, Pichola, and Richman both contractually and in a fiduciary capacity have and continue to have a duty to maintain the secrecy of TycoIS's Confidential Information and Trade Secrets.

112.    Upon information and belief, Messrs. Catagnus, Pichola, and Richman have used and/or disclosed and/or has threatened to disclose, TycoIS's Confidential Information and Trade Secrets, and, unless enjoined by this Court, upon employment by ISC in positions where their responsibilities involve the identical and/or nearly identical position to the responsibilities the Individual Defendants performed at TycoIS, will inevitably use, disclose and/or impart TycoIS's Confidential Information and Trade Secrets without license, without TycoIS's consent, and in violation of TycoIS's rights therein.

113.    Unless this Court enjoins ISC from employing Messrs. Catagnus, Pichola, and Richman, TycoIS will suffer irreparable harm as a result of Messrs. Catagnus, Pichola, and

Richman's and ISC's threatened Violation of the Pennsylvania Uniform Trade Secrets Act and those similar laws of all other States in which Defendants do business.

**COUNT V**

**UNFAIR COMPETITION – POACHING/RAIDING OF EMPLOYEES**
**(TycoIS v. ISC)**

114.   TycoIS incorporates by reference Paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.   By systemically targeting and thereafter inducing TycoIS employees to leave TycoIS to work at ISC, ISC has unfairly competed against ISC in violation of the Common Law of Pennsylvania.

116.   Upon information and belief, ISC has targeted these employees not because of a particular skill or gift but rather for the purpose of crippling and attempting to destroy an integral part of a competitor's business.

117.   Unless this Court enjoins ISC from specifically and systematically targeting TycoIS personnel, TycoIS will suffer irreparable harm as a result of ISC's unfair competition against TycoIS.

WHEREFORE, TycoIS requests that this Court enter judgment in its favor and against Messrs. Catagnus, Pichola, and Richman and against ISC, as follows:

a.   Enjoining ISC from employing Messrs. Catagnus, Pichola, and Richman either directly or indirectly, for the duration of their respective Restrictive Covenants including tolling any time during which the Individual Defendants were not in compliance with their obligations thereunder;

b.   Permanently Enjoining Messrs. Catagnus, Pichola and Richman from violating their Retention Incentive Agreements including, but not limited to, the prohibitions preventing them from:

(a)  solicit, recruit, or entice away any customer of the Company or Purchaser Group to do business with Employee or any Competitive Business with which Employee is affiliated or in any way to interfere with the contractual or business relationship by any customer with the Company or any member of the Purchaser Group;

(b)  provide names or other information about customers of the Company or any unit of the Purchaser Group to any person or business other than the Company or any unit of the Purchaser Group under circumstances which the Employee knows or should know could lead to use of that information for purposes of customer solicitation;

(c)  solicit, recruit, aid or induce any active employee of the Company, any unit of the Purchaser Group, or any of their parents, subsidiaries or affiliates to leave such employment to accept employment with or render services to or with any other person, firm, corporation, or other entity unaffiliated with the Company or any unit of the Purchaser Group or take any action to assist or aid any other person, firm, corporation or other entity in identifying or hiring any such employee;

(d)  hire, offer employment to, or participate in the hiring of any person who was at any time during the one year period preceding such activity an employee of the Company, any unit of the Purchaser Group, or any of their parents, subsidiaries or affiliates;

(e)  provide names or other information about active employees of the Company, any unit of the Purchaser Group, or any of their parents, subsidiaries or affiliates to any person or business other than the Company or any unit of the Purchaser Group under circumstances which the Employee knows or should know could lead to use of that information for purposes of employee solicitation; or

(f)  interfere with the relationship of the Company or any unit of the Purchaser Group with any of its or their employees, agents, or representatives.

c.      Permanently Enjoining Messrs. Catagnus, Pichola, and Richman from misappropriating and/or disclosing any TycoIS Confidential Information or Trade Secrets;

d.      Enjoining ISC from soliciting, requesting or using any TycoIS Confidential Information or Trade Secret disclosed, obtained and/or acquired from Messrs. Catagnus, Pichola, and Richman;

g.   Compensatory, consequential and punitive damages in an amount to be determined at a Trial of this matter; and

h.   Attorney's Fees as permitted by relevant Trade Secret Statutes or otherwise.

i.   Such other relief the Court may deem just and appropriate.

## **REQUEST FOR JURY**

Plaintiff respectfully requests a jury trial on any issue so triable.

By _____

M. Kelly Tillery, Esq.
Desa L. Burton, Esq.
Noah S. Robbins, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
(215) 981-4000
Attorney for Plaintiff
*Tyco Integrated Security LLC*
*tilleryk@pepperlaw.com*
*burtond@pepperlaw.com*
*robbinsn@pepperlaw.com*

Dated:  May 28, 2013